1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALEXIS CHRISTENSEN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>STUBHUB, INC.,<br>                    Defendant. | Case No.  2:25-cv-1957<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

AMENDED CLASS ACTION COMPLAINT
Case No.  2:25-cv-1957

Walsh PLLC
1561 Long Haul Road
Grangeville, ID 83530
(541) 359-2827

Plaintiff Alexis Christensen ("Plaintiff"), individually and on behalf of all others similarly situated (the "Classes," as defined below), brings this Amended Class Action Complaint against defendant StubHub, Inc. ("StubHub" or "Defendant"), and respectfully alleges as follows. Plaintiff bases the allegations herein on personal knowledge as to matters related to, and known to, her. As to all other matters, Plaintiff bases her allegations on information and belief, through investigation of her counsel. Plaintiff believes substantial evidentiary support exists for the allegations below and seeks a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    Plaintiff brings this consumer protection class action lawsuit against Defendant, based on Defendant's misleading conduct with respect to its "FanProtect Guarantee" (alternatively, "Guarantee").

2.    Pursuant to this Guarantee, StubHub represents to consumers that their tickets will be delivered in time for the event, the tickets will be valid for entry, and the tickets will be the same as or comparable to those ordered. If any of these guarantees are not met, consumers are assured that they will be provided comparable or better tickets, or they will be offered a full refund.

3.    StubHub represents all of this to consumers as part of "The StubHub Promise," and further underscores that its Guarantee is applicable in every circumstance by highlighting that it is "100% guaranteed[.] Because 99% guaranteed just sounds sketchy."  Graphic of promise below.[1]

---

[1] https://www.stubhub.com/promise (Last visited October 8, 2025).

AMENDED CLASS ACTION COMPLAINT          1
Case No. 2:25-cv-1957

Walsh PLLC
1561 Long Haul Road
Grangeville, ID 83530
(541) 359-2827

4.    However, based on information and belief, when circumstances require StubHub to follow through on its Guarantee, it declines to do so. Countless complaints to the Better Business Bureau confirm this.[2] Instead, StubHub routinely and knowingly provides inferior tickets and/or refuses to offer refunds, even when comparable or better tickets remain available on the StubHub platform .

5.    Indeed, reviews posted to StubHub's Better Business Bureau page reflect consumers facing similar experiences at all types of ticketed events for which StubHub sold tickets, ranging from professional sporting events and high-profile concert tours to theater productions, as seen below.[3]



_____

[2] https://www.bbb.org/us/ny/new-york/profile/event-ticket-sales/stubhub-inc-0121-87159166/more-info#alert-0_-6

[3] *Id.*

AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-1957

2

Walsh PLLC
1561 Long Haul Road
Grangeville, ID 83530
(541) 359-2827

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

 **Dominick I T**

**Date:** 09/20/2025

⭐☆☆☆☆

Bought tickets to a concert picked my seats and once i purchased i received an email stating tickets will be transferred hours before the concert which was months away. Finally get the tickets and its the opposite seats that i purchased. Call customer care of course no resolution. These people should be put out of business and not allowed to operate.

 **David J**

**Date:** 09/23/2025

⭐☆☆☆☆

This was absolutely the worst experience I have ever had trying to purchase tickets for an event. They sold me tickets that were not available until after the start of the event despite guarantees on their site that they would be available before the event. Then they agreed to give me specific replacement tickets, but they instead sent me different tickets that were not together. Finally, despite having missed a significant portion of the start of the event, they refused to rectify the situation. At that point I gave up. Trying to follow-up with them has been an absolute nightmare. They give you the run around and make it literally impossible for you to speak with someone that is not 100% bound by a script that they read from. If I could give them 0 stars I would.

 **Nicholas Z**

**Date:** 09/23/2025

 ⭐☆☆☆☆

Its incredible that shady companies like this are even allowed to exist. It seems everyone has their own scummy stubhub stories but specifically this time my wife and I bought tickets to a broadway show and booked a hotel in ***. About 3 hours before the start of our show they sent us a message stating the tickets are no longer available and all they can do is issue a refund or let us choose new seats of equal value. Well, as expected, since it was right before showtime the only seats left were way in the very back and more expensive that the tickets we bought. They basically told us we are out of luck and we once again are forced to let a rich, evil corporation push us around.

 **CARLOS S**

**Date:** 09/18/2025

 ⭐☆☆☆☆

I bought tickets from Stub Hub and the seller never released the tickets and I got to the event and still no tickets. I called in and the representative sent me balcony seats when I purchased floor seats. I told the guy I was not going to accept the tickets and did everything he told me. I have talked to several representatives and have been told since I was offered replacement tickets I can't get a refund clearly they can see I didn't attend the event I'm sure. Needless to say that I'm screwed out of my money and I will NEVER use Stub Hub EVER again!! I don't care if they are **** near free!

👤 **Andrew S**

Date: 10/01/2025

⭐☆☆☆☆

Negative or zero stars should be an option. Stubhub sold me a ticket to an *** playoff game, behind home plate, for a large sum of money. The money was charged to my credit card and I received an electronic ticket complete with the little moving baseballs for them to scan at the ********, less than 24 hours from the event, Stubhub tells me the ticket doesn't exist anymore and it's gone from the app. Yesterday I had an option to resell this ticket and now it doesn't exist?When I call to find out what is going on StubHub claims the seller pulled the ticket. How could that possible since I paid for it and was in possession of it with an option to sell? StubHub has no explanation.Instead, they offer a ticket that is with hundreds of dollars less and tell me that if I choose to take the vastly inferior ***lacement they won't refund the difference in price. What??? When I asked where the rest of my money would go, the first *** I dealt with tells me the seller of the new ticket would get all of my original purchase price, despite that being, again, 100s of dollars more than the ticket I would be getting as a ***lacement. That makes no sense at all, so I all for a supervisor.The supervisor then proceeds to tell me that StubHub would just keep the difference. Excuse me??? When I told them that it was fraud to hold a product out for sale, them deliver an inferior product and pocket the difference, they indicated this is how they do business and it was part of their terms and conditions.Long story short, StubHub's business practices are the shadiest I've ever encountered in decades of life. When I called my bank to dispute all the charges, the bank *** immediately recognized how messed up the situation was. Ideally I get the charges canceled, but will never use StubHub again and will tell everyone I know this story.StubHub has probably cheated 1000s of people this way to the tune of millions of dollars.STAY AWAY FROM THIS *************.

6.    This sampling of reviews from just a few weeks prior to the date of this Complaint demonstrates the prevalence of this issue.

7.    StubHub charges service fees for all ticket purchases and sales on its platform, imposing fees on both the buyer-side when a consumer purchases tickets, as well as the seller-side when a user resells tickets on the StubHub platform.

8.    StubHub represents to consumers that it charges service fees to "help [StubHub] deliver a secure resale ticket buying and selling experience[,]" and that "[f]ees enable [StubHub] to offer [its] FanProtect Guarantee."[4]

9.    Accordingly, StubHub profits to the consumers' detriment by charging them a premium for the FanProtect Guarantee that it does not honor.

10.    Plaintiff brings this lawsuit on behalf of herself and other consumers

---

[4] https://support.stubhub.com/articles/61000276392-stubhubs-fees-to-buy-and-sell-tickets

1    who purchased tickets through StubHub's platform.

2                            **JURISDICTION AND VENUE**

3          11.    This Court has jurisdiction over this action pursuant to the Class Action

4    Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA").  The matter in controversy,

5    exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is

6    diversity of citizenship between some members of the proposed classes and the

7    Defendant.

8          12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)

9    because Defendant sells tickets throughout the State of Washington, including in this

10   District, and caused harm to class members residing in this District. Further, Plaintiff

11   purchased tickets through StubHub in this District within the statute of limitations

12   period, including the subject purchase described herein.

13         13.    This Court has personal jurisdiction over Defendant because Defendant

14   has sufficient minimum contacts in the State of Washington, and/or otherwise

15   intentionally avails itself of the markets within the State of Washington, through the

16   sale of tickets in this State and to Washington consumers to render the exercise of

17   jurisdiction by this Court permissible under traditional notions of fair play and

18   substantial justice.

19                                  **PARTIES**

20   **Plaintiff**

21         14.    Plaintiff Alexis Christensen is a citizen of Washington and resides in

22   Kirkland, Washington.

23         15.    In August 2024, Ms. Christensen purchased three tickets to the

24   December 6, 2024 show of Taylor Swift's record-breaking Eras Tour at BC Place

25   Stadium in Vancouver, British Columbia for approximately $14,000 USD through

26   StubHub's platform.

27         16.    The Vancouver shows were Swift's final stop on her record-breaking

28

1    tour that spanned 149 shows across five continents.

2          17.    Each and every show of Swift's Eras Tour sold out at the box office, so

3    many would-be concertgoers relied on resale ticket marketplaces, like StubHub, to

4    purchase tickets.

5          18.    In addition to breaking records at the box office, StubHub Holdings,

6    Inc. attributes its own recent financial strength as "primarily due to the popularity of

7    Taylor Swift's record-setting 'Eras' tour[.]"[5] While the U.S. secondary ticket market

8    has an "historical low-to-mid teens long-term growth rate[,]" Taylor Swift's Eras

9    Tour helped the market explode to the tune of 24-percent growth in a single year.

10         19.    On December 6, 2024, the day of the Taylor Swift concert, StubHub

11   informed Ms. Christensen that the tickets she had purchased were unavailable.

12   StubHub assured her that, pursuant to the Guarantee, it would provide comparable

13   or better tickets no later than 60 minutes before the concert began.

14         20.    In reality, fewer than 40 minutes before the start of the concert (and two

15   hours after venue doors had already opened), StubHub provided Ms. Christensen

16   with tickets that were plainly inferior to those she originally purchased. StubHub

17   gave her two options: (1) seats in Section 218, which only provided a sharply angled

18   side view of the stage and were available on StubHub for $3,600 for all three seats;

19   or (2) "listening section only" seats that were each behind the stage, had a face value

20   of about $12.00, and had no view of the main stage.

21         21.    Through her own efforts, Ms. Christensen located comparable tickets,

22   which remained available for purchase. The comparable tickets were in Section 248,

23   which was one section over from Section 249, where her original tickets were

24
25   ---
     [5] StubHub Holdings, Inc., Registration Statement (Form S-1), at 128,_(Mar. 21,
     2025),
26   https://www.sec.gov/Archives/edgar/data/1337634/000119312525060140/d225849
     ds1.htm.  Stubhub, Inc. is a wholly owned subsidiary of Stubhub Holdings, Inc.
27
28

---

located. While on the phone with a StubHub representative, she specifically requested that StubHub acquire and deliver those or equivalent tickets. StubHub refused.

22.    For context, the map of the seating chart at BC Place for the Eras Tour is provided below:



23.    With less than forty minutes until the once-in-a-lifetime concert began, and with no alternative option or recourse provided by Defendant, Ms. Christensen was forced to use the inferior tickets that StubHub provided, which were located in Section 218. Even these tickets were delivered so close to the start time that Ms. Christensen missed part of the opening act by the time she was seated.

24.    As illustrated in the images below, she had a view of the concert from Section 218 that was significantly worse than the view from Section 249 that she had paid

for. In Section 249, Plaintiff would have had a full view of the stage, including the runway reaching from the main stage out onto the concert floor, whereas in Section 218 Plaintiff only had a sharply angled side view of the main stage, and a rear view whenever the runway was in use.




Section 248                                         Section 218

25.    After being strong-armed into using StubHub's inferior tickets in Section 218, Plaintiff checked the StubHub platform online and saw that prices for other tickets in Section 218 were still available on Defendant's platform at a price of approximately $1,200 per ticket. Accordingly, the three tickets that she received as a replacement for the tickets that she had actually purchased were worth a total of about $3,600—markedly less than the roughly $14,000 USD she paid for the three tickets she initially bought. Plaintiff did not receive a refund for this difference; instead, based on information and belief, StubHub pocketed the difference.

26.    Moreover, this concert was part of the final stop of the Eras Tour, and therefore, Plaintiff did not have any other opportunities to see this show again.

27.    Had Plaintiff known that she would not receive the protections promised by the FanProtect Guarantee, she would not have purchased tickets through StubHub and/or paid for the Guarantee, or would have paid less.

**Defendant**

28.    Defendant StubHub, Inc. is a Delaware corporation with its principal place of business at 150 Greenwich Street, 61st Floor, New York, NY 10007. StubHub is a global online marketplace and the leading platform for fans to buy and sell tickets to live events, including sports, concerts, and theater. In 2024 StubHub Holdings, Inc. sold over 40 million tickets to buyers in 200 countries for events in at least 90 different countries.[6] Moreover, in 2024 StubHub Holdings, Inc. had approximately $1.77 billion in revenue, drawing an overwhelming percentage of its revenues from the United States market and earning nearly all of its revenues through transaction fees.[7] StubHub Holdings, Inc. believes it is the largest global secondary ticketing marketplace for live events.[8]

29.    According to StubHub Holdings, Inc.'s Form S-1 Registration Statement, filed with the SEC on March 21, 2025, just days before StubHub Holdings, Inc.'s initial public offering, "[t]he foundation of [StubHub Holdings, Inc.'s] success rests on [its] ability to offer buyers an experience built on…security [and] trust…" through the FanProtect Guarantee so "buyers have peace of mind knowing their ticket is authentic."[9]

**FACTUAL ALLEGATIONS**

**StubHub's FanProtect Guarantee**

30.    StubHub is a secondary ticketing platform that markets "security and

---

[6] *Id*. at 3.
[7] *Id.* at F-58, F-59.
[8] *Id.* at 1.
[9] *Id.* at 10.

trust" as one of is "key value propositions to buyers."[10]

31.    The company touts security and trust as a key value proposition, stating:

"Every transaction on our marketplace is safeguarded by the highest standards of security and trust that start with secure payment and ticket delivery and extend to the buyer's experience on event day. Our FanProtect program guarantees all purchases on our marketplace, so buyers have peace of mind knowing their ticket is authentic. We believe that live events represent once-in-a-lifetime experiences; therefore, should any issue with the ticket arise, we have support teams that play a critical role in helping find substitute tickets to ensure a buyer can attend the event."[11]

32.    StubHub allegedly provides consumer with security and trust through its FanProtect Guarantee.[12]

33.    StubHub's FanProtect Guarantee promises Buyers:

You will get your tickets in time for the event[;]

Your tickets will be valid for entry[;]

Your tickets will be the same as or comparable to those you ordered[;]

If any of these things do not occur and you comply with applicable policies and timelines, we will find you comparable or better tickets to the event, or offer you a refund of what you paid for your purchase or credit of the same amount for use on a future purchase[;] and

If the event is canceled and not rescheduled, you will get a refund or credit for use on a future purchase, as determined in our sole discretion (unless a refund is required by law)[.][13]

---

[10] *Id.* at 10.
[11] *Id.* at 10-11.
[12] *Id.*
[13] StubHub, FanProtect Guarantee, https://www.stubhub.com/legal/?section=fp (last visited Oct. 8, 2025).

34.    StubHub inundates users of its platform with the Guarantee. For instance, the footer on every StubHub webpage advertises the Guarantee with a checkmark-and-shield icon, and tells consumers that StubHub guarantees consumers



can "[b]uy and sell with confidence[,]" receive "[c]ustomer service all the way to your seat[,]" and most crucially, StubHub tells consumers that "[e]very order is 100% guaranteed[.]"

35.    StubHub repeats similar messages about the Guarantee on every page as consumers shop the platform for event tickets, telling users that StubHub "back[s] every order so [users] can buy and sell tickets with 100% confidence."

As users select tickets from the marketplace:



And at each stage of the checkout process:



36.     On its website, StubHub represents its FanProtect Guarantee as a guarantee to consumers that they ***will receive comparable tickets or a full refund*** in the event that StubHub is unable to deliver the tickets purchased by a consumer.

37.     However, in its S-1 filing, StubHub Holdings, Inc. concedes that StubHub's FanProtect Guarantee is actually far less valuable than it represents to consumers. Instead of promising *comparable tickets*, the Guarantee only promises

that "our customer support team ***works to help buyers find replacement tickets***."[14] Based on information and belief, by providing consumers with *replacement* tickets that are far less valuable than their original tickets, StubHub is able to pocket the difference in value and further profit from this fraudulent scheme.

**StubHub Charges Consumers a Premium for the Guarantee**

38.    StubHub charges fees specifically tied to the security promised by the FanProtect Guarantee, marketing it as peace of mind and protection for consumers purchasing tickets through its platform.

39.    As illustrated below, StubHub explicitly represents to consumers at checkout that they are being charged fees on top of the ticket price so StubHub can provide them with a "safe, global marketplace."



40.    Plaintiff, and other consumers, are willing to pay this premium due (sometimes as high as a few thousand dollars) to the protection that StubHub allegedly provides by way of its Guarantee, which consumers reasonably believe will be honored.

---

[14] Form S-1, n. 5, *supra* at 135.

Walsh PLLC
1561 Long Haul Road
Grangeville, ID 83530
(541) 359-2827

**Defendant's Deceptive Conduct**

41.    Despite its representations, StubHub regularly declines to honor its FanProtect Guarantee. As noted, *supra* ¶ 5, StubHub has a pattern and practice of refusing to honor its Guarantee.

42.    When tickets are unavailable because, for instance, a consumer either does not receive their ticket in time for the event or does not receive a ticket that is valid at entry, StubHub does not provide comparable or better tickets.

43.    Instead, StubHub knowingly provides inferior tickets and/or refuses to offer refunds, even when comparable tickets remain available.

44.    StubHub knows, or reasonably should know, that when it offers inferior tickets shortly before, and after a consumer has already traveled to, an event, the consumer is left with no meaningful choice.

45.    At that point, the consumer has already invested substantial time, money, and effort in order to attend the event in reliance on StubHub's Guarantee.

46.    Moreover, the consumer has no reasonable opportunity to secure alternative tickets without incurring substantial additional expenses to acquire comparable tickets themselves.

47.    As a result, StubHub exploits the consumer's lack of alternatives and coerces them into using tickets that are significantly less valuable than those they purchased.

48.    Had consumers known that StubHub does not honor its Guarantee, no reasonable consumer would have paid the premium StubHub charges for its allegedly "secure" tickets.

**Defendant's Unjust Enrichment**

49.    StubHub's failure to honor its Guarantee of providing "comparable or better tickets" is not motivated by mere incompetence or the unavailability of such tickets. Rather, StubHub has constructed a business process that allows it to super-

size its profit when sellers are unable to provide the tickets that buyers have purchased.

50.    When a consumer buys tickets on StubHub, the purchase is subject to various service fees, which StubHub represents are necessary to provide the Guarantee, as discussed *supra* ¶ 38-39.

51.    Consumers pay for tickets at the time of purchase, including applicable fees. StubHub then holds the funds in escrow until it is time to pay the funds out to the seller, less the seller-side service fee.

52.    Payouts to sellers are "processed within 8 business days after the event," which StubHub explains "ensures there [are] no issues with [the seller's] tickets."[15]

53.    If there are issues with a seller's tickets, thereby rendering them unusable to the buyer, the seller does not receive their payout.

54.    In the event that a seller does not provide valid tickets, Defendant charges sellers "whichever is greater: 100% of the price of the tickets sold[, or] [t]he full amount incurred by [StubHub] to remedy the issue for the buyer."[16]

55.    Accordingly, StubHub receives fees *twice* for every transaction on its platform, at the time of purchase from the buyer *and* at the time of payout from the seller, for a Guarantee that it fails to honor.

56.    Further, in the event that a buyer makes a claim under the Guarantee, StubHub charges the seller *at least the full price of the tickets* that were sold.

57.    Given that StubHub holds funds in escrow from the time of purchase and does not release them to sellers, StubHub could just as easily refund the buyer

---

[15]    https://support.stubhub.com/articles/61000276591-get-paid-for-sold-tickets (last visited Oct. 2, 2025).
[16]    https://support.stubhub.com/articles/61000276392-stubhubs-fees-to-buy-and-sell-tickets (last visited Oct. 2, 2025).

1  or refund the difference between the purchase price and the value of any replacement

2  tickets offered.

3  58.    Instead, StubHub retains the full purchase price from the buyer **and**

4  charges the full purchase price to the seller, all while charging and retaining the

5  buyer's fees, and refusing to honor the terms of its Guarantee.

6  59.    And, on information and belief, when StubHub provides replacement

7  tickets to a consumer like Plaintiff, StubHub acts as a buyer to acquire the

8  replacement tickets from its platform, charging fees to the seller of **those** tickets, too.

9  60.    Using Plaintiff's case as an example, on information and belief,

10 StubHub received approximately $14,000 USD from Ms. Christensen at the time of

11 her purchase, including approximately $3,600 in fees. StubHub then passed some

12 unknown amount of these funds into escrow as the seller's payout. However,

13 StubHub then learned that the tickets were unavailable and notified Plaintiff, which

14 amounted to a violation of StubHub's Seller Policies. Plaintiff located **actually**

15 **comparable** tickets and asked StubHub's representative to acquire these tickets, but

16 StubHub refused. Instead, StubHub proceeded to offer Plaintiff replacement tickets

17 that were not comparable in monetary or experiential value to the seats she had

18 bargained for and purchased. StubHub acquired the inferior tickets from its

19 marketplace, acting as a buyer and charging the seller fees, accordingly. Then, faced

20 with no other means of seeing the once-in-a-lifetime show, Ms. Christensen used the

21 inferior tickets. Still, under StubHub's terms, StubHub then **charged the original**

22 **seller the full purchase price** of Ms. Christensen's original purchase.

23 61.    To be sure, under its policies, StubHub would receive the full cost of

24 covering any payout under its Guarantee from the seller of the tickets that were

25 unavailable, including any fees.

26 62.    Put another way, on information and belief, StubHub collected about

27 $14,000 from Ms. Christensen, approximately $3,600 of which was a StubHub-

28

1    imposed fee to provide, *inter alia*, the Guarantee. When Ms. Christensen made her

2    claim under the Guarantee, StubHub provided her with patently inferior tickets

3    valued at $3,600, and then charged another roughly $14,000 to the seller for

4    violations of StubHub policy, amounting to nearly $24,000 of ill-gotten gains by

5    StubHub's refusal to honor its Guarantee. On information and belief, StubHub also

6    charged fees to the seller of the replacement tickets, allowing Defendant to triple-

7    dip on these fees and retain thousands of dollars.

8        63.    Even if StubHub was entirely unable to recover any funds from the

9    seller, StubHub has still retained over $10,000 more from Ms. Christensen than the

10   fair market value of the tickets she actually received.

11                          **CLASS ACTION ALLEGATIONS**

12       64.    Plaintiff brings this class action pursuant to Rule 23 of the Federal

13   Rules of Civil Procedure, individually and on behalf of all members of the following

14   Classes (collectively the Classes are referred to herein as the "Classes"):

15       **Washington Subclass**

16

17   All persons who purchased one or more tickets through StubHub and either
     reside in the State of Washington, or purchased a ticket for a Washington-

18   based event, within the applicable statute of limitations period.

19       **Nationwide Class**
     All persons who are purchased one or more tickets for an event through

20   StubHub in the United States, within the applicable statute of limitations

21   period.

22

23       65.    Excluded from the Classes are the following individuals and/or entities:

24   Defendant and its parents, subsidiaries, affiliates, officers and directors, current or

25   former employees, and any entity in which Defendant has a controlling interest; all

26   individuals who make a timely election to be excluded from this proceeding using

27   the correct protocol for opting out; and all judges assigned to hear any aspect of this

28

litigation, as well as their immediate family members.

66.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes after having had an opportunity to conduct discovery.

67.    Plaintiff is a member of all Classes.

68.    <u>Numerosity:</u> The proposed Classes are so numerous that joinder of all members would be impractical. While Plaintiff is informed and believes that the Classes consist of hundreds of thousands if not millions of Class Members, the precise number of Class Members and their identities are unknown to Plaintiff, but may be ascertained from StubHub's books and records.

69.    <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual members of the Classes. These questions include, but are not limited to, the following:

    a.  Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the FanProtect Guarantee;

    b.  Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices;

    c.  Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

    d.  Whether Plaintiff and the Classes are entitled to damages and/or restitution, and in what amount;

    e.  Whether Defendant is likely to continue using false, misleading, or unlawful conduct such that an injunction is necessary; and

    f.  Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

70.    Defendant has engaged in a common course of conduct giving rise to

violations of the legal rights sought to be enforced uniformly by Plaintiff and members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's misleading conduct in connection with its advertisement of its FanProtect Guarantee. Each instance of harm suffered by Plaintiff and members of the Classes has directly resulted from a single course of illegal conduct. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

71.    <u>Superiority</u>: Because of the relatively small size of the claims of the individual members of the Classes, no member of the Classes could afford to seek legal redress on an individual basis.  Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

72.    <u>Typicality</u>: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

73.    <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in class action litigation. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

74.    This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23, including Fed. R. Civ. P. Rule 23(b)(2), because Defendant acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed

1  Classes, supporting the imposition of uniform relief, both monetary and injunctive,
2  to ensure compatible standards of conduct toward the members of the Classes.

3      75.    Plaintiff reserves the right to alter the definitions of the Classes as she
4  deems necessary at any time to the full extent that the Federal Rules of Civil
5  Procedure, the Local Rules of the United States District Court for the Western
6  District of Washington, and applicable precedent allow.

7      76.    Certification of Plaintiff's claims for class-wide treatment is
8  appropriate because Plaintiff can prove the elements of her claims on a class-wide
9  basis using the same evidence as individual members of the Classes would use to
10 prove those elements in individual actions alleging the same claims.

11 **CLAIMS FOR RELIEF**

12 **COUNT I**
13 **Violation of the Washington Consumer Protection Act**
**WASH. REV. CODE ANN. §§ 19.86.010, *et seq.***
14 ***(By Plaintiff individually and on behalf of the Washington Subclass)***

15     77.    Plaintiff incorporates the preceding and subsequent allegations as if set
16 forth fully herein.

17     78.    Plaintiff brings this claim individually and on behalf the Washington
18 Subclass, against StubHub for its violations of Washington's Consumer Protection
19 Act (the "Washington CPA").

20     79.    Defendant, Plaintiff, and each member of the Washington Subclass are
21 "person[s]" under Wash. Rev. Code Ann. § 19.86.010(1) ("Washington CPA").

22     80.    At all relevant times, Defendant was and is engaged in "trade" or
23 "commerce" under Wash. Rev. Code Ann. § 19.86.010(2).

24     81.    In the course of Defendant's business, Defendant advertised that every
25 ticket that consumers purchased through its platform was protected by the
26 FanProtect Guarantee, which StubHub fails to honor. Specifically, StubHub fails to
27 honor its Guarantee's promise that it will provide consumers with comparable or

28

AMENDED CLASS ACTION COMPLAINT        20        Walsh PLLC
Case No. 2:25-cv-1957                         1561 Long Haul Road
                                             Grangeville, ID 83530
                                             (541) 359-2827

better tickets if the original tickets the consumer purchased through StubHub are either not delivered to the consumer in time for the event or are not valid for entry. Instead, under such circumstances, StubHub regularly provides consumers tickets with lower quality seats than they originally paid for. The net effect of Defendant's conduct is that consumers pay a premium by way of a fee to StubHub to ensure the security of their purchase, which does not exist, to the detriment of the consumers.

82.   Defendant knew or should have known that its conduct violated the Washington CPA.

83.   Defendant owed Plaintiff and the Washington Subclass a duty to disclose the truth about the deceptive Guarantee because Defendant:

> a. Possessed exclusive knowledge of the deceptive FanProtect Guarantee practices; and
>
> b. Intentionally concealed the foregoing from Plaintiff and the Washington Subclass.

84.   Defendant's conduct proximately caused injuries to Plaintiff and the other Washington Subclass members.

85.   Plaintiff and the other Washington Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Washington Subclass paid a premium for the protections offered by the Guarantee. These injuries are the direct and natural consequence of Defendant's misrepresentations, fraud, deceptive practices, and omissions.

86.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein impact the public interest, in that consumers are paying a premium for secure purchases and higher quality tickets than they actually receive as a result of Defendant's conduct.

87.     Defendant is liable to Plaintiff and the Washington Subclass for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages up to $25,000.00, as well as any other remedies the Court may deem appropriate under Wash. Rev. Code. Ann. § 19.86.090.

**<u>COUNT II</u>**
**Intentional Misrepresentation**
***(By Plaintiff individually and on behalf of the Nationwide Class, or alternatively, the Washington Subclass)***

88.     Plaintiff incorporates the preceding and subsequent allegations as if set forth fully herein.

89.     Plaintiff brings this claim individually and on behalf of the Nationwide Class, or in the alternative, for the Washington Subclass, against StubHub.

90.     StubHub made misleading statements to Plaintiff and members of the Nationwide Class and Washington Subclass, including but not limited to, statements that their ticket purchases were protected by the FanProtect Guarantee and regarding the quality of the tickets that they would ultimately receive. StubHub had no intention of honoring its misleading statements to Plaintiff and members of the Nationwide Class and Washington Subclass. StubHub willfully, purposefully, and intentionally deceived Plaintiff and members of the Nationwide Class and Washington Subclass for its own benefit.

91.     StubHub represented that the fees paid by consumers on top of the ticket prices were for the purpose of ensuring that consumer was making a secure purchase. StubHub does so by ways of its FanProtect Guarantee, which promises Buyers:

> You will get your tickets in time for the event[;]

> Your tickets will be valid for entry[;]

> Your tickets will be the same as or comparable to those you

ordered[;]

If any of these things do not occur and you comply with applicable policies and timelines, we will find you comparable or better tickets to the event, or offer you a refund of what you paid for your purchase or credit of the same amount for use on a future purchase[;] and

If the event is canceled and not rescheduled, you will get a refund or credit for use on a future purchase, as determined in our sole discretion (unless a refund is required by law)[.][17]

However, StubHub does not honor this promise and, instead of providing consumers with comparable or better tickets when appropriate under the Guarantee, provides them with inferior tickets.

92.    Plaintiff and members of the Nationwide Class and Washington Subclass suffered damages proximately caused by StubHub because they paid money, in an amount to be proven at trial, for the Guarantee, which they would not have purchased and/or paid as much for them had they known about StubHub's intentional misrepresentations.

93.    Plaintiff and members of the proposed Nationwide Class and Washington Subclass are entitled to attorneys' fees by agreement or relevant statutory authority according to proof.

<u>**COUNT III**</u>
**Common Law Fraud**
***(By Plaintiff individually and on behalf of the Nationwide Class, or alternatively, the Washington Subclass)***

94.    Plaintiff incorporates the preceding and subsequent allegations as if set forth fully herein.

95.    Plaintiff brings this claim individually and on behalf of the Nationwide Class, or in the alternative, for the Washington Subclass, against StubHub.

---

[17] StubHub, FanProtect Guarantee, n. 13, *supra*.

Walsh PLLC
1561 Long Haul Road
Grangeville, ID 83530
(541) 359-2827

96.    StubHub has willfully, falsely, and knowingly misrepresented to Plaintiff and members of the Nationwide Class and Washington Subclass, that it would honor its FanProtect Guarantee.

97.    StubHub represented that the fees paid by consumers on top of the ticket prices were for the purpose of ensuring that consumer was making a secure purchase. StubHub does so by ways of its FanProtect Guarantee, which promises Buyers:

> You will get your tickets in time for the event[;]
>
> Your tickets will be valid for entry[;]
>
> Your tickets will be the same as or comparable to those you ordered[;]
>
> If any of these things do not occur and you comply with applicable policies and timelines, we will find you comparable or better tickets to the event, or offer you a refund of what you paid for your purchase or credit of the same amount for use on a future purchase[;] and
>
> If the event is canceled and not rescheduled, you will get a refund or credit for use on a future purchase, as determined in our sole discretion (unless a refund is required by law)[.][18]

However, StubHub does not honor that promise and, instead of providing consumers with comparable or better tickets when appropriate under the Guarantee, provides them with worse tickets. StubHub knew that it had no intention of honoring its Guarantee to Plaintiff and members of the Nationwide Class and Washington Subclass.

98.    StubHub also represented to consumers that they were paying for a higher quality ticket than they would ultimately receive. Based on information and

---

[18] StubHub, FanProtect Guarantee, n. 13, *supra*.

belief, StubHub knew that they would likely substitute the ticket consumers purchased for a ticket of lesser quality, thereby profiting substantially for this "bait-and-switch" scheme. Additionally, StubHub knew or should have reasonably known that it would not have sufficient inventory to honor its promise to always provide a comparable or better ticket if a consumer's original ticket is unavailable at the time of the event.

99.    Therefore, StubHub has made knowing, fraudulent misrepresentations and omissions as to the sale of event tickets and the protections provided by its FanProtect Guarantee.

100.    StubHub's misrepresentations and omissions were material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making payment decisions), because they relate to whether the consumer can make a purchase with trust and security.

101.    StubHub knew or recklessly disregarded that fact that it would not, or could not, perform the obligations that arose from its representations.

102.    StubHub intended that Plaintiff and other consumers rely on these omissions and misrepresentations, as they are pertaining to the facts that, if revealed to consumers, would affect their purchase decisions in that they would not have purchased the tickets or would have paid less.

103.    Plaintiff and members of the Nationwide Class and Washington Subclass have reasonably and justifiably relied on StubHub's misrepresentations and omissions when purchasing tickets and, had the correct facts been known, would not have paid money for the Guarantee.

104.    Therefore, as a direct and proximate result of StubHub's fraud, Plaintiff and members of the Nationwide Class and Washington Subclass have suffered economic losses and other general and specific damages, including, but not limited to, the amounts paid for the purchase protections that the Guarantee is supposed to

1    provide, and any interest that would have accrued on those monies, all in an amount
2    to be proven at trial.

3        105.    Plaintiff and members of the Nationwide Class and Washington
4    Subclass are entitled to attorneys' fees by agreement or relevant statutory authority
5    according to proof.

6    **<u>COUNT IV</u>**
**Fraudulent Inducement**
7    ***(By Plaintiff individually and on behalf of the Nationwide Class, or alternatively,***
8    ***the Washington Subclass)***

9        106.    Plaintiff incorporates the preceding and subsequent allegations as if set
10    forth fully herein.

11        107.    Plaintiff brings this claim individually and on behalf of the Nationwide
12    Class, or in the alternative, for the Washington Subclass, against StubHub.

13        108.    By way of the wrongful acts and omissions as alleged herein, StubHub
14    will be unjustly enriched if it is able to retain profits from its actions free from any
15    claims by Plaintiff and members of the Nationwide Class and Washington Subclass.

16        109.    As a direct and proximate result of StubHub's fraud, Plaintiff and
17    members of the Nationwide Class and Washington Subclass have suffered economic
18    losses and other general and specific damages, including, but not limited to, the
19    amounts paid for the purchase protections promised by the Guarantee, and any
20    interest that would have accrued on those monies, all in an amount to be proven at
21    trial.

22        110.    Plaintiff and members of the Nationwide Class and Washington
23    Subclass are entitled to attorneys' fees by agreement or relevant statutory authority
24    according to proof.

25
26
27
28

AMENDED CLASS ACTION COMPLAINT      26      Walsh PLLC
Case No. 2:25-cv-1957      1561 Long Haul Road
Grangeville, ID 83530
(541) 359-2827

1
2
3

<u>COUNT IV</u>
**Quasi-Contract/Restitution/Unjust Enrichment**
*(By Plaintiff individually and on behalf of the Nationwide Class, or alternatively, the Washington Subclass)*

4    111.    Plaintiff incorporates the preceding and subsequent allegations as if set
5    forth fully herein.

6    112.    Plaintiff brings this claim individually and on behalf of the members of
7    the Nationwide Class, or in the alternative, for the Washington Subclass, against
8    StubHub.

9    113.    As alleged herein, Defendant intentionally, recklessly, and/or
10    negligently omitted and misrepresented material information about the protections
11    provided to consumers by its FanProtect Guarantee. Plaintiff and members of the
12    Nationwide Class and Washington Subclass have reasonably relied on the
13    misleading omissions and representations. Plaintiff and members of the Nationwide
14    Class and Washington Subclass have therefore been induced by Defendant's
15    misleading and false omissions and representations about the Guarantee, to purchase
16    tickets or pay more for them then they would have otherwise.

17    114.    Plaintiff and members of the Nationwide Class and Washington
18    Subclass have conferred a benefit upon Defendant, as Defendant has retained monies
19    paid to it (directly or indirectly) by Plaintiff and members of the Nationwide Class
20    and the Washington Subclass.

21    115.    The monies received were obtained under circumstances that were at
22    the expense of Plaintiff and members of the Nationwide Class and Washington
23    Subclass – *i.e.*, Plaintiff and members of the Nationwide Class and Washington
24    Subclass did not receive the full value of the benefit conferred upon Defendant
25    because Defendant misrepresented the Guarantee.

26    116.    Therefore, it is inequitable and unjust for Defendant to retain the profit,
27    benefit, or compensation conferred upon them without paying Plaintiff and members

28

1  of the Nationwide Class and Washington Subclass back for the difference of the full

2  value of the benefit compared to the value actually received.

3      117.   As a direct and proximate result of Defendant's unjust enrichment,

4  Plaintiff and members of the Nationwide Class and Washington Subclass are entitled

5  to restitution, disgorgement, and/or the imposition of a constructive trust upon all

6  profits, benefits, and other compensation obtained by Defendant from its deceptive,

7  misleading, and unlawful conduct as alleged herein.

8      118.   Monetary damages are an inadequate remedy at law because injunctive

9  relief is necessary to deter Defendant from continuing its false and deceptive conduct

10 regarding its Guarantee.

11              **PRAYER FOR RELIEF**

12     WHEREFORE, Plaintiff, individually and on behalf of the members of the

13 Classes, respectfully requests the following relief:

14     A.    certifying the proposed Classes under Federal Rule of Civil Procedure

15 23(a), (b)(2), and (b)(3), as set forth above;

16     B.    declaring that Defendant is financially responsible for notifying the

17 members of the Classes of the pendency of this suit;

18     C.    declaring that Defendant has committed the violations of law alleged

19 herein;

20     D.    providing for any and all injunctive relief the Court deems appropriate;

21     E.    awarding monetary damages, including, but not limited to, any

22 compensatory, incidental, or consequential damages in an amount that the Court or

23 jury will determine, in accordance with applicable law;

24     F.    providing for any and all equitable monetary relief the Court deems

25 appropriate;

26     G.    awarding Plaintiff her reasonable costs and expenses of suit, including

27 attorneys' fees;

28

H.    awarding pre- and post-judgment interest to the extent the law allows; and

I.    providing such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.


Date: November 6, 2025                 Respectfully submitted,

                                       **WALSH PLLC**

                                       By: *s/ Bonner C. Walsh*
                                           Bonner C. Walsh (Bar No. 48915)
                                           *bonner@walshpllc.com*
                                           1561 Long Haul Road
                                           Grangeville, ID 83530
                                           Telephone: (541) 359-2827
                                           Facsimile: (866) 503-8206

                                           *Counsel for Plaintiff*



## **CERTIFICATE OF SERVICE**


This is to certify that a true and correct copy of the foregoing document and its exhibits has been furnished to counsel for Defendant, via the ECF System, in accordance with the Federal Rules of Civil Procedure, this 6th day of November, 2025.


                                       By:    s/ Bonner C. Walsh

                                       Bonner C. Walsh, WSB #48915