UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALEXIS CHRISTENSEN,<br><br>                    Plaintiff,<br><br>        v.<br><br>STUBHUB, INC.,<br><br>                    Defendant. | CASE NO. 2:25-cv-01957<br><br>ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING CASE |

## 1.  INTRODUCTION

This matter comes before the Court on Defendant StubHub, Inc.'s ("StubHub") Motion to Compel Arbitration and to Stay Case Pending Arbitration, Dkt. No. 5. Plaintiff Alexis Christensen opposes. She argues that she did not assent to StubHub's arbitration agreement and that, even if she did, the agreement is unenforceable. For the reasons explained below, the Court GRANTS StubHub's motion, Dkt. No. 5, and STAYS this case in its entirety pending arbitration.

ORDER - 1

## 2.  BACKGROUND

StubHub operates an online ticket marketplace that allows users to buy and sell tickets for live events. Christensen created a StubHub account on May 23, 2018. Dkt. No. 6 ¶ 12; Dkt. No. 16 at 4.

On August 8, 2024, Christensen signed into her StubHub account and purchased three tickets to a Taylor Swift concert in Vancouver, Canada for approximately $14,000. Dkt. 11 ¶ 15; Dkt. No. 6 ¶ 13. On December 6, 2024—the day of the concert—StubHub informed Christensen that her original tickets were unavailable, and then 40 minutes before the concert began, provided her with three new tickets. Dkt. 11 ¶ 19–20. The replacement tickets were for worse seats valued at $3,600. *Id.* ¶ 20. She was never refunded the difference. *Id.* ¶ 25.

StubHub contends that Christensen agreed to arbitrate any and all claims against StubHub relating to her use of the website and StubHub's services when she created her StubHub account, each time she signed into her account, and when she purchased her tickets. Dkt. No 5.

On October 9, 2025, Christensen sued StubHub bringing individual and class-action claims under the Washington Consumer Protection Act and common law arising from her ticket purchase and StubHub's handling of its FanProtect Guarantee. Dkt. No. 11. StubHub had previously commenced arbitration before the AAA on September 16, 2025. Dkt. No. 7 ¶ 3. StubHub now moves to compel arbitration and stay this case pending arbitration. Dkt. No. 5.

ORDER - 2

### 3. LEGAL STANDARD

Arbitration fundamentally remains "a matter of contract," and parties cannot be compelled to arbitrate disputes they did not agree to submit to arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Under the FAA, a court presented with a motion to compel arbitration must determine two threshold issues: "'(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Johnson v. Walmart, Inc.*, 57 F.4th 677, 680 (9th Cir. 2023) (citation omitted). The party seeking to compel arbitration bears the burden of establishing both elements by a preponderance of the evidence. *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024). District courts *must* compel arbitration of claims covered by an enforceable arbitration agreement. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing 9 U.S.C. § 3).

"'In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation.'" *Id.* Christensen is a citizen of Washington, Dkt. No. 11 ¶ 14, and the User Agreement provides that claims and disputes shall be governed by California law, Dkt. Nos. 6 ¶ 3; 6-1 § 21.1. The parties have not identified any meaningful difference between Washington and California law on the question of contract formation, and the Ninth Circuit has consistently observed that state laws are uniform in this area. *See Godun v. JustAnswer LLC*, 135 F.4th 699, 709, 709 n.2 (9th Cir. 2025); *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023); *Berman*, 30 F.4th at 855. Because the laws of the states in question "dictate the same outcome,"

ORDER - 3

the Court need not resolve the issue. *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1175 (9th Cir. 2014). As discussed below, the Ninth Circuit has developed a framework for evaluating the enforceability of online agreements that draws on these common state-law principles.

## 4.   DISCUSSION

### 4.1   Christensen assented to *StubHub's User Agreement.*

StubHub contends that Christensen agreed to its Global User Agreement ("User Agreement"), which contains an arbitration clause, when she signed into her account and when she purchased her tickets. Dkt. No. 6 ¶¶ 9–13. StubHub's sign-in and purchase pages each contain an advisal with a hyperlink to the User Agreement, but Christensen was not required to separately indicate that she had read or agreed to those terms before signing in to her account or purchasing her tickets. StubHub's website thus most closely resembles a "sign-in wrap agreement."[1] *Godun*, 135 F.4th at 708–09. Under the inquiry-notice analytical framework applicable to such agreements, a sign-in wrap agreement is an enforceable contract if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action,

---

[1] Sign-in wrap agreements "'include a textual notice indicating the user will be bound by the terms, but they do not require the consumer to review those terms or to expressly manifest their assent to those terms by checking a box or clicking an 'I agree' button.'" *Godun*, 135 F.4th at 709 n.3. (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 471, 289 Cal.Rptr.3d 1 (2021))."Instead, the consumer is 'purportedly bound' to the terms of service agreement 'by clicking some other button that they would otherwise need to click to continue with their transaction or their use of the website—most frequently, a button that allows the consumer to 'sign in' or 'sign up' for an account.'" *Id.*

ORDER - 4

such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at 709; *see also Chabolla v. ClassPass Inc.,* 129 F.4th 1147, 1154–55 (9th Cir. 2025) (citation omitted).

The Court focuses its analysis on Christensen's August 8, 2024, sign-in and ticket purchase. When Christensen signed into her StubHub account on August 8, 2024, she encountered the following page:



Dkt. No. 6-3 at 2.

ORDER - 5

Directly beneath the "Sign In" buttons reads the following: "By signing in or creating an account, you agree to our user agreement and acknowledge our privacy policy." Dkt. No. 6-3. The text is in dark gray font and contrasts with the white background. The phrases "user agreement" and "privacy policy" appear in blue, hyperlinked text.

When Christensen clicked to purchase her Taylor Swift tickets, she encountered the following:



Case 2:25-cv-01957-JNW    Document 6-4    Filed 10/22/25    Page 2 of 2

By clicking the button below you acknowledge and accept our **terms and conditions** and **privacy policy**.

**Buy Now**

Dkt. No. 6-4 at 2.

Directly above the "Buy Now" button, StubHub's purchase page states: "By clicking the button below you acknowledge and accept our terms and conditions and privacy policy." Again, the key terms are hyperlinked in blue and lead directly to the User Agreement.

StubHub's sign-in screen displays the advisal when a user logs into a StubHub account. Dkt. No. 6 ¶ 8. The purchase advisal appears when a user completes a ticket purchase. *Id.* ¶¶ 9–10. Christensen thus encountered the sign-in advisal when she logged into her account on August 8, 2024, and the purchase advisal when she bought the Taylor Swift tickets that same day.

ORDER - 6

The hyperlinks on both pages lead directly to StubHub's User Agreement. Dkt. No. 6 ¶¶ 5, 8–10. The first page of the User Agreement states, in bolded, all-capitalized text:

> **CLAUSE 22 OF THIS AGREEMENT CONTAINS AN AGREEMENT TO ARBITRATE, WHICH WILL, WITH LIMITED EXCEPTIONS, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST US TO BINDING AND FINAL ARBITRATION, UNLESS YOU OPT-OUT. UNLESS YOU OPT OUT: (1) YOU WILL ONLY BE PERMITTED TO PURSUE CLAIMS AGAINST US ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING[.]**

Dkt. No. 6-1 § 1. The User Agreement also gives users a 30-day opt-out period. Dkt. No. 6-1 § 22.1.E. Christensen did not opt out.

### 4.1.1    The Sign-in page and purchase page provide reasonably conspicuous notice of StubHub's terms and conditions.

The first element of the sign-in wrap test asks whether StubHub's website provided "reasonably conspicuous notice of the terms to which the consumer will be bound." *Chabolla*, 129 F.4th at 1154. It did.

In considering whether notice is conspicuous, courts consider how the notice is displayed in terms of font size, text placement, overall screen design, and whether it would provide notice to a reasonably prudent Internet user. *Id.* at 1155. The inquiry has always been context and fact specific. *Id.* Terms can be disclosed through hyperlinks, but such links "must be readily apparent." *Id.* at 1156.

On both pages, the advisal appears in legible text, positioned in immediate proximity to the action button, with the hyperlink to the User Agreement displayed in contrasting blue font against a white background—a convention that signals a

ORDER - 7

clickable link to a different page. *See Berman*, 30 F.4th at 857; *Chabolla*, 129 F.4th at 1157; *see also Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 587 (N.D. Cal. 2020) (a reasonably prudent user recognizes that blue text generally signifies a hyperlink). The advisals are within the user's natural flow of action—not "tucked away in obscure corners of the website." *Nguyen*, 763 F.3d at 1177.

Thus, the Court finds visual elements of the sign in page sufficient to provide conspicuous notice that "a reasonably prudent Internet user would have seen." *See Keebaugh*, 100 F.4th at 1020.

### 4.1.2    Unambiguous manifestation of assent to the terms.

The second part of the test—whether the user takes some action that unambiguously manifests assent—is also satisfied. *Chabolla*, 129 F.4th at 1158. "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857. "[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id.* at 858.

The advisals on the sign in page and the purchase page expressly notified Christensen of the legal significance of clicking "Sign In" and "Buy Now." The sign in page reads: "[b]y signing in or creating an account, you agree to our user agreement." Dkt. No. 6 ¶ 8. The purchase page states: "[b]y clicking the [buy] button below you acknowledge and accept our terms and conditions." *Id.* ¶ 9. This is the precise formulation the Ninth Circuit has indicated would satisfy the assent

ORDER - 8

requirement. *See Berman*, 30 F.4th at 858 (noting that the notice defect in that case "could easily have been remedied by including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions.'"). Both notices explicitly notified Christensen that by signing into her account and by purchasing the tickets, she was agreeing to StubHub's terms and conditions.

Christensen contends that StubHub's use of "terms and conditions" on the purchase page—rather than "user agreement," as on the sign in page—is misleading. Dkt. No. 16 at 7–8. The Court disagrees. "[M]utual assent is based on 'the reasonable meaning' of the parties' words." *Keebaugh*, 100 F.4th at 1021 n.6 (citation omitted). The phrase "terms and conditions" is commonly used and well-known, and the hyperlink leads directly to the User Agreement. The use of this phrase is not misleading.

Christensen also challenges StubHub's evidence regarding the account-creation process in May 2018, arguing that StubHub's initial screenshots reflect the current interface rather than the one that existed when she registered. Dkt. No. 16 at 4–6. But the Court need not resolve this dispute because, even assuming Christensen's 2018 account creation did not independently bind her to the User Agreement, she assented to the current User Agreement when she signed into her account and purchased tickets on August 8, 2024.

## 4.2     Christensen's challenges to enforceability lack merit.

Christensen raises two challenges to the enforceability of the arbitration provision. Neither has merit.

ORDER - 9

First, Christensen argues that the arbitration agreement is void under its own severability clause. Dkt. No. 16 at 8.[2] Her argument proceeds in steps: the class action prohibition in the User Agreement precludes public injunctive relief in violation of *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017); the severability clause in the 2018 User Agreement provides that if the class action prohibition is invalid, "the entirety of this Agreement to Arbitrate shall be null and void," Dkt. No. 15-1 at 18 ¶ D; and therefore the entire arbitration agreement is automatically voided. Dkt. No. 16 at 8–9.

This chain of reasoning fails, however, because none of its predicates hold. To start, the current User Agreement—not the 2018 version—is the operative agreement between the parties, because Christensen assented to it when she signed into her account and purchased tickets on August 8, 2024, as discussed above. Arguments based on the 2018 severability language are therefore inapposite.

Moreover, under the current agreement, the *McGill* rule does not invalidate the class action prohibition because: (1) the current User Agreement does not preclude the remedy of public injunctive relief in arbitration, *see DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1156 (9th Cir. 2021) (holding that *McGill* does not invalidate an arbitration agreement that allows a plaintiff to seek all remedies

---

[2] The Court takes judicial notice of the 2017 User Agreement, which Christensen provides the Court with a copy of. Dkt. No. 15. Under F. R. Evid. 201(b), the Court may take judicial notice of facts that are "not subject to reasonable dispute" because it either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.". Judicial notice may be taken "of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

ORDER - 10

available in an individual lawsuit, including public injunctive relief); (2) Christensen's complaint does not seek public injunctive relief in the *McGill* sense, Dkt. No. 11 at 29; and (3) Christensen asserts claims under Washington law, not the California statutes at issue in *McGill*. Because the class action prohibition is not invalid, the severability clause is never triggered.

Second, Christensen argues that StubHub's unilateral modification of the severability clause— from automatic voiding to voiding only "if [StubHub] so elect[s]"—renders the arbitration agreement substantively unconscionable. Dkt. No. 16 at 9. But binding Ninth Circuit authority forecloses this argument, as "the presence of a unilateral modification provision, without more, does not render a separate arbitration clause at all substantively unconscionable." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480 (9th Cir. 2024). Christensen does not identify any actual unconscionable modification to the arbitration clause.

### 4.3 A stay pending arbitration is required.

Once a court has determined that a lawsuit is arbitrable under the FAA, the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3 (emphasis added). As such, having determined that Christensen's claims are subject to mandatory arbitration and that she assented to the arbitration agreement,[3] this Court is statutorily required to stay this action pending resolution

---

[3] The arbitration clause covers "any and all disputes or claims" relating to Christensen's "use of or access to the Site or Services, or any tickets or related

ORDER - 11

of the parties' arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983).

## 5. CONCLUSION

For the reasons explained above, the Court GRANTS StubHub's motion to compel arbitration. Dkt. No. 5. Plaintiff is ORDERED to arbitrate her claims against StubHub. This action is STAYED as to all parties pending completion of the arbitration. The Court DIRECTS the parties to file a joint status report every 120 days from the date of this Order, apprising the Court as to the status of the arbitration.

Dated this 7th day of April, 2026.

Jamal N. Whitehead
United States District Judge

---

passes sold or purchased through the Site or Services[.]" Dkt. No. 6-1 § 22.1. The Court concludes that Christensen's claims fall within the scope of the arbitration clause. Christensen does not argue otherwise.

ORDER - 12